IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| OSCAR CANTU-RAMIREZ, #15325-078 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:13CV11 |
| | § | CRIMINAL ACTION NO. 4:08CR107 (1) |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Movant Oscar Cantu-Ramirez filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, alleging constitutional violations concerning his Eastern District of Texas, Sherman Division conviction. The motion was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

**I. FACTUAL BACKGROUND**

The United States Court of Appeals for the Fifth Circuit provided a broad factual background:

> This case arises from the successful investigation and prosecution of an international criminal organization that trafficked in significant amounts of marijuana and cocaine. The conspirators brought drugs from Mexico to the United States in a conspiracy so large that law enforcement investigated it on two fronts simultaneously. The first front was based in Texas, the second in Mississippi. The conspirators regularly shipped thousands of pounds of marijuana and hundreds of kilograms of cocaine at a time across the Mexican border and to various destinations in the United States ranging from Laredo to New York.
>
> Nazario Cavazos ran the drug trafficking organization, and Cantu-Ramirez and Grimaldo were major figures in his organization. Cantu-Ramirez's co-conspirators

1

testified that he was one of Cavazos's most trusted confidantes. Cantu-Ramirez negotiated the sale of marijuana and cocaine with an undercover agent; was responsible for the delivery of four marijuana samples to the agent; discussed customers who did not pay for drugs with co-conspirators; took orders for cocaine and marijuana from customers and co-conspirators; transported and collected payment for drugs on behalf of Cavazos; and was present when a vast quantity of marijuana was delivered to a business called Landmark Tile that testimony showed acted as a regular stopping point on the drugs' journey from Mexico to their ultimate destinations in the United States.

The more specific factual background as it concerns Movant's trial is taken from the Government's Response, which, in turn, was gathered from the presentence report (citations omitted):

> Investigation in this case began when law enforcement officers received a tip relating to Cantu-Ramirez's marijuana trafficking activities. During the investigation Cantu-Ramirez was identified as lieutenant in a well-organized and influential drug organization.
>
> During trial, numerous government witnesses testified that Cantu-Ramirez was intimately involved with the shipment and sale of marijuana, cocaine, and MDMA. Wiretaps revealing the sale of 251 pounds of marijuana were introduced at trial. The wiretaps also revealed that Cantu-Ramirez used his minor son to negotiate drug deals.
>
> According to the testimony of numerous government witnesses, Cantu-Ramirez was responsible for a total of 14,101.33 pounds or 6,396.36 kilograms of marijuana, 3,000 tablets of MDMA, and 406.12 kilograms of cocaine. For example, Fabian Lara testified that he delivered 6,500 pounds of marijuana to Landmark Tile Supply Company and observed Cantu-Ramirez supervising the unloading of the marijuana. Landmark Tile Supply was located directly across the street from a Dallas ISD elementary school. In addition, Victor Rodriguez, an undercover law enforcement officer, witnessed Cantu-Ramirez negotiate the sale of cocaine and a total of 4,865 pounds of marijuana. Finally, Victor Thomas testified that Cantu-Ramirez picked up $879,000 from Thomas as payment for previous sales of cocaine and marijuana.

## II. PROCEDURAL BACKGROUND

Movant was charged with conspiracy to manufacture, distribute, or possess with intent to manufacture or distribute a controlled substance, in violation of 18 U.S.C. § 846. On August 26,

2009, Movant proceeded to a jury trial. The court gave the jury several instructions regarding the testimony of witnesses and the finding of guilty on a conspiracy charge. The jury found Movant guilty, holding him responsible for five kilograms of cocaine, 1,000 kilograms of marijuana, and some amount of 3,4 methylenedioxymethamphetamine. On March 19, 2010, the court sentenced Movant to 360 months' imprisonment. On February 6, 2012, the United States Court of Appeal for the Fifth Circuit affirmed Movant's conviction and sentence. *United States v. Cantu-Ramirez*, 669 F.3d 619, 622 (5th Cir. 2012).

Movant filed the present motion pursuant to § 2255, asserting that he is entitled to relief based on ineffective assistance of counsel and trial court error. The Government filed a Response, asserting that Movant's claims are without merit. Movant did not file a Reply.

### III. § 2255 PROCEEDINGS

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). A movant in a § 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-01 (5th Cir. 1992). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Movant claims, in several grounds for relief, that his trial counsel was ineffective.

**Legal Standard**

A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). In order to succeed on a claim of ineffective assistance of counsel, a movant must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 864 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. 466 U.S. at 690, 104 S. Ct. at 2066. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981). *See also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984).

Secondly, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Movant must "affirmatively prove," not just allege, prejudice. *Id.*, 466 U.S. at 693, 104 S. Ct. at 2067. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.*, 466 U.S. at 697, 104 S. Ct. 2052.

**Failure to Object**

In several issues, Movant asserts that trial counsel was ineffective for failing to object. A trial counsel's failure to object does not constitute deficient representation unless a sound basis exists for objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (a futile or meritless objection cannot be grounds for a finding of deficient performance). Even with such a basis, however, an attorney may render effective assistance despite a failure to object when the failure is a matter of trial strategy. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (noting that a failure to object may be a matter of trial strategy as to which courts will not second guess counsel). To succeed on such a claim, a petitioner must show that the trial court would have sustained the objection and that it would have actually changed the result of his trial. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). On habeas review, federal courts do not second-guess an attorney's decision through the distorting lens of hindsight, but rather, the courts presume that counsel's conduct falls within the wide range of reasonable professional assistance and, under the circumstances, that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

**Failure to Object to Testimony Concerning Wiretap**

Movant claims that counsel's failure to object to "irrelevant" testimony regarding the procedures required to obtain a Title III wiretap caused prejudice to his case. He claims that the evidence regarding the procedure used to obtain wiretaps was not needed for the jury to evaluate the conversations recorded by the wiretap or his guilt or innocence. Specifically, Movant complains that the testimony of Agents Mark Styron and John Gottlob was overly prejudicial. He argues the

following statements were overly prejudicial:

> Agent Mark Styron: It's actually pretty rigorous. You have to go through all those things that we talked about before and put that information together. You work with a prosecutor, an Assistant U.S. Attorney, and put together an affidavit. They're usually fairly lengthy. They can be 50, 60, 70 pages in length.
>
> Agent John Gottlob (in response to whether wiretaps can be instituted for as long as one year): Wiretaps are expensive. I don't see that happening.
>
> Questioning between the Government and Agent John Gottlob (procedure for procuring a wiretap):
>
> Q: And, in fact, is there a finding by the United States District Judge in this order under "A" here.
>
> A: Yes, Ma'am, there is.
>
> Q: And is that finding that there's probable cause to believe that Oscar Ramirez . . . and other persons yet unknown are committing, will commit, violations of Title 21, United States Code, Section 841, which is possession with intent to distribute and distribution of controlled substances, namely cocaine, and Title 21 United States Code 843, use of a communications facility to conduct a drug trafficking offense?
>
> And then, focusing on page 2 again, the Judge made a probable cause finding that Title 21 United States Code, conspiracy to distribute and possess with the intent to distribute controlled substances, namely cocaine, and then the other offenses that were being committed, there was a probable cause finding, conspiracy to import a controlled substance, namely cocaine, interstate and foreign transportation in aid of racketeering activity, money laundering, and bulk cash smuggling. Did the United States District Judge make a finding or probable cause to believe that these events were occurring?
>
> A: Yes, Ma'am.

In support of his claim, Movant relies on a case from the Seventh Circuit, *United States v. Cunningham*, 462 F.3d 708 (7th Cir. 2006). There, the Seventh Circuit held that the extensive opinions of senior government officials, who believed there was probable cause for a wiretap, amounted to improper vouching regarding the strength of the evidence. *Id.* at 712. However,

subsequent to that decision, the Seventh Circuit held that any error in admitting the testimony of government agents about the procedures used to obtain a wiretap did not affect the substantial rights of the defendant because the inference that the defendant was engaged in illegal activity before the wiretap was harmless given the overwhelming evidence of the defendant's guilt. *United States v. Bustemante*, 493 F.3d 879, 888 (7th Cir. 2007). Moreover, the Fifth Circuit has held that the Government meets its burden of authenticating tapes and transcripts of tapes used at trial where the government establishes how a wiretap is initiated, how the equipment was operated, the operator's competency, the recording equipment's fidelity, the accuracy of composite tapes, and the separate identification of each speaker. *United States v. Brown*, 693 F.2d 345, 350 (5th Cir. 1982).

First, Movant relies on an opinion from the Seventh Circuit. Even if Movant had directed the court to a similar Fifth Circuit case, the decision in *Brown* shows that the Government is required to show how the process for obtaining a wiretap was initiated. The Government met its burden through the testimony about which Movant complains. *Id*. Assuming *arguendo*, however, that counsel should have objected to the comments concerning probable cause, the record shows overwhelming evidence of Movant's guilt outside of that testimony. Movant fails to show that, had counsel objected and had the trial court sustained the objection, it would have actually changed the result of his trial given the substantial amount of other evidence of guilt. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

**Failure to Object to Dual Role Testimony**

Movant next claims that the purported dual roles of Styron, Rodriguez, and Gottlob as both fact and expert witnesses confused the jury, and the court's instructions to the jury failed to cure the error. According to Movant, he was not given the proper protections to which he is entitled.

7

In support of his claim, Movant cites again to a Seventh Circuit case, *United States v. Farmer*, 543 F.3d 363 (7th Cir. 2008). There, the Seventh Circuit found that (1) an appropriate cautionary instruction by the court, (2) the examination of witnesses to establish when the witness is testifying as an expert or fact witness, and (3) the cross-examination by defense alleviated any prejudice or confusion when law enforcement officers testified as both a fact and expert witness. *Id*. at 370-71. In *Farmer*, the district court instructed the jury that it could judge the testimony of expert witnesses in the same way as lay witnesses, and give the testimony whatever weight it believed was proper. *Id*. at 371.

In the instant case, a review of the record shows that the court gave an instruction that tracked the Fifth Circuit Pattern Jury Instruction 1.17 and also covered the points set out in *Farmer*. Movant's counsel cross-examined Styron. Both parties and the court conducted an extensive *voir dire* of Rodriguez, and Movant objected to Rodriguez's testimony based on hearsay and requested a limiting instruction. Movant's counsel extensively cross-examined Gottlob. Additionally, the Government laid a foundation for all three witnesses to be considered experts.

The record shows that Movant was afforded all protections to which he was entitled, including those enunciated in the Seventh Circuit case upon which Movant relies – *Farmer*. Movant fails to point to any evidence from the record, or otherwise, to show he was prejudiced by the dual role testimony of these witnesses. Failure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness. *Green*, 160 F.3d at 1037. Trial counsel's failure to object does not constitute deficient representation unless a sound basis exists for objection. *Emery*, 139 F.3d at 198. Movant fails to show that the trial court would have sustained the objection and that it would have actually changed the result of his trial. *Strickland*, 466 U.S. at

8

694, 104 S. Ct. at 2068.

**<u>Failure to Object to Prosecutor's Alleged Improper Vouching</u>**

Movant also complains that counsel was ineffective for failing to object to the Government's implication that cooperating witnesses – Lonnie Johnson, Walter Velasquez, Fabian Lara, Federico Garcia, and Jorge Gaytan – must be telling the truth when the Government questioned them about their plea agreements and if they were testifying in front of the same judge that would eventually sentence them. Specifically, Movant asserts that this line of questioning resulted in an improper implication that the witnesses must be telling the truth since the judge in this case will be the same judge sentencing them eventually.

Where improper prosecutorial argument is asserted as a basis for habeas relief, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2462, 91 L. Ed.2d 144 (1986). Rather, the relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. The appropriate standard of review on habeas corpus "is the narrow one of due process, and not the broad exercise of supervisory power." *Id*. To constitute a denial of due process, the acts complained of must be of such character as to necessarily prevent a fair trial. *Nichols v. Scott*, 69 F.3d 1255, 1278 (5th Cir. 1995). Moreover, the burden is on the habeas petitioner to show a reasonable probability that, but for the remarks, the result would have been different.[1] *Id*.

When evaluating whether a prosecutor's remark affected the substantial rights of a defendant,

---

[1] Counsel's failure to object to an argument at trial is an indication that it was not perceived as having a substantial adverse effect. *Id*.

three factors are considered: (1) the magnitude of the prejudicial remarks; (2) the efficacy of any cautionary instruction by the judge; and (3) the strength of the evidence supporting the convictions. *United States v. Williams*, 343 F.3d 423, 437-38 (5th Cir. 2003).

The comments that Movant points out were part of the Government's foundation to admit the plea agreements of the witnesses into evidence. The question elicited facts but did not bolster the witnesses' testimony. Moreover, the defense cross-examined the witnesses and the court gave an instruction to the jury concerning cooperating witnesses.

Movant fails to show that the remarks were overly prejudicial, that the instruction by the judge was not effective, or that the strength of the evidence in support of his conviction was weak. *Williams*, 343 F.3d at 437-38. Trial counsel's failure to object does not constitute deficient representation unless a sound basis exists for objection. *Emery*, 139 F.3d at 198. He fails to show that the trial court would have sustained the objection and that it would have actually changed the result of his trial. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Movant also fails to show that the alleged error prevented a fair trial. *Nichols*, 69 F.3d at 1278.

**Failure to Object to Prosecutor's Implication that Greninger was Truthful**

Movant also claims counsel was ineffective for failing to object to the prosecutor's implication in closing arguments that Agent Sean Greninger must be telling the truth because "he has nothing to do with the case," and he "doesn't look like someone who would do that."

A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence. *United States v. Mendoza*, 522 F.3d 482, 490 (5th Cir. 2008). "The sole purpose of closing argument is to assist the jury in analyzing, evaluating and applying the evidence." *United States v. Dorr*, 636 F.2d 117, 120

(5th Cir. Unit A Feb. 1981). A prosecutor may argue fair inferences from the evidence that a witness has no reason to lie, but cannot express a personal opinion on the credibility of a witness. *United States v. Gracia, Jr.,* 522 F.3d 597, 600-01 (5th Cir. 2008). If it is determined that the prosecutor's remarks were in error, the question then is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict. *United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001).

Movant concedes in his § 2255 motion that the prosecutor only implied that Greninger had no reason to lie. In the statements about which Movant complains, the prosecutor was noting that Greninger's involvement in the case was limited to the arrest of Lauro Grimaldo. Even if the prosecutor's comments were in error, Movant fails to show that the remarks cast serious doubt on the correctness of the jury's verdict. *Id*. Movant fails to show that the trial court would have sustained the objection and that it would have actually changed the result of his trial. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

**Failure to Object to Prosecutor's Personal Opinion in Closing Argument**

Movant claims counsel was ineffective because he failed to object when the prosecutor purportedly injected a personal opinion in the closing argument. Follow are the statements about which Movant complains:

> You heard testimony from DEA Agent Mark Styron, who was the very first witness in the case. He's an expert in drug distribution, drug transportation.
>
> [Movant] uses his son - as you heard in a couple of those very sad and unfortunate calls, he's using his son, Oscar Ramirez, Jr., to interpret.
>
> Judge Schell will send the superseding indictment back to the jury room with you. If you look at the superseding indictment, you'll see the defendant Oscar Ramirez is charged in the superseding indictment along with Kevin Smith and along with Raul

11

> Ramirez and [Lauro Grimaldo]). He's admitting that he conspired with Kevin Smith to distribute marijuana. Raul Ramirez and Kevin Smith are charged in the superseding indictment along with the (petitioner) Cowboy, and Judge Schell is instructing you if the defendant is involved on one occasion with another person, then they qualify as charged in the superseding indictment, then they're guilty.

The prosecutor's statements are referring to evidence directly from the trial, which is not improper. The statement concerning Styron was establishing the foundation for him to testify as an expert witness. Evidence was presented at trial showing that Movant used his minor son as an interpreter in his drug transactions. Finally, the prosecutor's statements concerning the indictment were reminders to the jury of the court's instruction on the law. These statements are not improper, and when compared to the overwhelming evidence against Movant, they also cannot be considered prejudicial. Failure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness. *Green*, 160 F.3d at 1037. Trial counsel's failure to object does not constitute deficient representation unless a sound basis exists for objection. *Emery*, 139 F.3d at 198. Movant fails to show that the trial court would have sustained the objection and that it would have actually changed the result of his trial. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. This issue is meritless.

## V. TRIAL COURT ERROR

Movant claims that the trial court erred because Movant was not able to cross-examine every out-of-court declarant involved in obtaining the wiretap order. The United States Supreme Court has held that the harmless error analysis that should be used on federal habeas review is the test under *Kotteakos* – "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson,* 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1722, 123 L.

Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed. 1557 (1946)). Under this standard, "habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637, 113 S. Ct. at 1722 (quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S. Ct. 725, 732, 88 L. Ed.2d 814 (1986)). Here, Movant must show actual prejudice. *Id*.

Specifically, Movant first complains that he was not able to cross-examine Special Agent Bret Spears. In *Brown*, the Fifth Circuit held that the trial court's error was harmless when it admitted the wiretap authorization order into evidence during the Government's testimony to establish the validity of the wiretap. *Brown*, 693 F.2d at 350. It found the error harmless because the defendant was able to cross-examine the out-of-court declarants. *Id*.

In this case, Agent Spears prepared an initial affidavit, but then Agent Gottlob replaced Spears for the majority of the process by preparing subsequent affidavits for the request to obtain the wiretap order. Movant extensively cross-examined Agent Gottlob. Movant received the protections of the hearsay rule by cross-examining Agent Gottlob. Moreover, a district court's admission of expert testimony is analyzed under harmless error analysis. *United States v. Mendoza-Medina*, 346 F.3d 121, 127 (5th Cir. 2003). Harmless error is any error that does not affect the substantial rights of a defendant or when a mistake does not cause prejudice to the defendant. *United States v. Munoz*, 150 F.3d 401, 412-13 (5th Cir. 1998). When the error affects the outcome of the proceedings, prejudice occurs. *Id*. Movant fails to show that he suffered prejudice. His claim is conclusory. Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . mere conclusory allegations do not raise a constitutional issue in a habeas proceeding."

*Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983)). Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

Movant also complains about testimony from Styron, Rodriguez and Gottlob. It is well-settled that experienced narcotics officers may testify concerning the significance of certain conduct or methods of operation unique to drug distribution because such testimony has been found to be helpful in assisting the jury to understand the evidence. *United States v. Washington,* 44 F.3d 1271, 1282-83 (5th Cir. 1995). When a witness is clearly qualified, there is no abuse of discretion when the court does not formally qualify the witness as an expert. *United States v. Griffith,* 118 F.3d 318, 323 (5th Cir. 1997). Any error in the admission of opinions by government agents and confidential informants can be considered harmless when compared to overwhelming evidence of the defendant's guilt. *Washington*, 44 F.3d at 1282-83.

The record shows that Styron was an experienced narcotics officer who testified about the procedures used by drug traffickers. Rodriguez testified about his personal experience with Movant while acting as an undercover officer. Gottlob testified about his personal experience concerning the establishment of the Title III wiretaps. Movant has not shown the district court erred. Moreover, Movant fails to show that he suffered prejudice or that the district court's alleged error was not harmless. *Brecht*, 507 U.S. at 637, 113 S. Ct. at 1722. He fails to show the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.,* 507 U.S. at 637-38, 113 S. Ct. at 1722.

## VI. CONCLUSION

In his numerous ineffective assistance of counsel claims, Movant fails to show that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Id*. He also fails to show that the district court's alleged error was not harmless or that he suffered prejudice. *Brecht*, 507 U.S. at 637, 113 S. Ct. at 1722. For these reasons, Movant's motion should be denied.

## VII. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, it is respectfully recommended that the court, nonetheless, address whether Movant would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04, 146 L. Ed.2d 542 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37, 123 S. Ct. 1029, 1039, 154 L. Ed.2d 931 (2003) (citing *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604). Accordingly, it is respectfully recommended that the court find that Movant is not entitled to a certificate of appealability.

## VIII. RECOMMENDATION

It is accordingly recommended that Movant's motion for relief under 28 U.S.C. § 2255 be denied and the case dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)( C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge

is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 22nd day of February, 2016.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE